458 A.2d 1356

**COMMONWEALTH of Pennsylvania**

v.

**John FARRIOR, Appellant.**

Superior Court of Pennsylvania.

Argued May 5, 1982.

Filed March 4, 1983.

Reargument Denied May 16, 1983.

Petition for Allowance of Appeal Denied Aug. 23, 1983.

Daniel M. Preminger, Philadelphia, for appellant.

Mark S. Gurevitz, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, ROWLEY and CIRILLO, JJ.

ROWLEY, Judge:

Appellant was convicted, on October 10, 1980, after a jury trial, of murder in the first degree [1] and possession of an instrument of crime.[2] Post-trial motions for a new trial and arrest of judgment were denied and appellant was sentenced to life imprisonment on the murder conviction and to a consecutive sentence of not less than two and one-half (2½) nor more than five (5) years imprisonment on the possession charge. This direct appeal followed.

Three issues are raised on appeal in support of appellant's motion for a new trial. Appellant argues that: 1) the trial court erred in admitting into evidence the victim's statements to police made at the scene of the crime; 2) the trial court erred in admitting into evidence the victim's response in the hospital two weeks after the crime to a police officer's questions; and 3) the trial court erred in ruling that appellant and his proposed character witnesses could be cross-examined concerning (a) appellant's 1966 *arrest* for wantonly pointing a firearm, threats, and breach of the peace, and (b) his 1961 conviction for assault. Appellant has not pursued his motion in arrest of judgment on appeal.[3]

On appeal from an order of the trial court denying an appellant's motion for a new trial, our review is limited to a determination of whether there has been an abuse of discretion or an error of law on the part of the trial court. In the absence of either of these elements, the order denying a new trial will not be disturbed. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068 (1978), *Commonwealth v. Morales*, 458 Pa. 18, 326 A.2d 331 (1974). We have concluded that the trial court's ruling relative to the cross-examination of appellant's proposed character witnesses constituted prejudicial error. The case must therefore be

1. 18 Pa.C.S. § 2502(a).

2. 18 Pa.C.S. § 907(a).

3. We have, however, reviewed the record and find that the evidence is sufficient to support the jury's verdict.

remanded for a new trial. We have, however, addressed appellant's remaining issues since they are likely to recur.

## I.

On June 1, 1979, at approximately 8:35 PM, Officer Winfred Hunter of the Philadelphia Police Department arrived at the northwest corner of 26th and Haggert Streets in Philadelphia in response to a radio call. He found the victim, James Fanning, lying in a pool of blood on the steps of a building. When asked what had occurred, Mr. Fanning stated that he had been shot by appellant. At about the same time, Officer Gerald Nimmo arrived on the scene. He also was told by the victim that he had been shot by appellant. Appellant's counsel objected at trial to the statements identifying appellant as Fanning's assailant on the ground that they were hearsay. The trial court overruled appellant's objection and admitted the statements into evidence, ruling that they constituted excited utterances within the scope of the res gestae exception to the hearsay rule.

To constitute an excited utterance, a statement must be "a spontaneous declaration by a person whose mind has been suddenly made subject to an over-powering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties". *Allen v. Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942). There is no doubt that being shot, as was Mr. Fanning, is a sufficiently shocking event. *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975). His statements were made at the scene approximately ten minutes after the shooting and were related to the incident. The victim was trembling, bleeding, in pain and had difficulty communicating. The mere fact that the statements were made in response to questions does not preclude their being spontaneous. *Commonwealth v.*

*Banks,* 454 Pa. 401, 311 A.2d 576 (1973). Thus, the trial court properly ruled that the statements were admissible under the res gestae exception to the hearsay rule.

## II.

Appellant also claims that the court erred in overruling his objection to testimony concerning the victim's response to a detective's inquiry approximately two weeks after the shooting. On the night of June 16, 1979, Detective Edward Gallagher received a call from a registered nurse at the Women's Medical College Hospital informing him that Mr. Fanning was expected to die in a short period of time. Detective Gallagher went to the hospital where he found the victim conscious, but unable to speak because of a tube in his throat. The detective asked the victim to respond to questions by nodding his head yes or no. Detective Gallagher then informed Mr. Fanning that he was going to die. He asked the victim if appellant had shot him, to which the victim nodded yes. Mr. Fanning died six hours later. This response of the victim identifying appellant as his assailant was admitted by the trial court as a dying declaration and thus admissible as another exception to the hearsay rule.

A statement of the declarant's own observations is admissible as a dying declaration if, at the time it was made, the declarant believed he would die, that his death was imminent, and death actually ensued. *Commonwealth v. Miller,* 490 Pa. 457, 417 A.2d 128 (1980). In this case, Mr. Fanning died and his death was "imminent" when he was questioned by Detective Gallagher. Moreover, his response to the question was based on his own observation of appellant and was not the product of surmise or conjecture. The admissibility of such evidence, however, "depends primarily upon the state of the declarant's mind". *Commonwealth v. Smith,* 454 Pa. 515, 518, 314 A.2d 224, 225 (1973) (citations and quotation omitted). There is sufficient evidence in the record in this case to establish that Mr. Fanning believed he was dying.

While at the victim's bedside in the hospital, Detective Gallagher asked a series of twelve questions to ascertain if the victim comprehended his situation. Although the victim could not speak, his action of nodding his head was responsive to Detective Gallagher's questions and showed an understanding of who he was and where he was and what had happened to him on June 1st. Included in Detective Gallagher's testimony concerning his meeting with the victim approximately six hours before the victim's death, was the following passage:

"Do you know why you're here in the hospital?

And he nodded, yes.

I have been told that you are in very critical condition. Do you understand?

He nodded, yes.

You're going to die tonight. Do you understand?

He nodded, yes.

During the series of questions the victim openly wept. He was in the intensive care unit of the hospital and was connected to several machines. He was aware that he had been seriously wounded by a shot in the abdomen which he believed had paralyzed him. He subsequently died of kidney failure and gastrointestinal hemorrhaging which were directly related to the gunshot wound. The trial court in concluding that Mr. Fanning's identification of appellant as his murderer constituted a dying declaration, applied the correct legal principles to the uncontradicted testimony. Thus, the court did not err in overruling appellant's objection at trial to the testimony by Detective Gallagher.

## III.

Appellant's final argument is that the trial court erred in ruling that the credibility of appellant and his proposed character witnesses could be attacked by cross-examination concerning his 1966 arrest, which did not result in a conviction, and his 1961 conviction for assault.

At trial, after the Commonwealth had rested its case in chief, the jury was excused for the day and a side-bar discussion ensued during which appellant's counsel informed the court that he intended to call a number of character witnesses on behalf of the appellant who would testify that he was "known to have a good reputation and to be a law-abiding citizen." Appellant's counsel requested a ruling from the court on whether the witnesses, if called, could be cross-examined by the District Attorney concerning a 1966 arrest of appellant for wantonly pointing a firearm, threats and breach of the peace, as well as a 1961 conviction for assault. The court ruled that the witnesses could be cross-examined about the arrest and the conviction and that the District Attorney would be "limited strictly to this dealing with the big issue as to law-abiding citizen because that's what they would so testify to." Following the court's ruling, counsel for appellant stated:

I see. Accordingly, since Your Honor has indicated or ruled if I may say, you would permit the introduction of those two items [1966 arrest; 1961 conviction] that Mr. Marano [District Attorney] referred to, I choose not to call any character witnesses because I feel that Your Honor's ruling will so prejudice the defendant and deprive him of his right to have a jury hear testimony of his reputation for good character and honesty, but without the introduction of the cross-examination *I feel that since these matters are so remote, that they should not be submitted to the jury if the defendant is called.* (emphasis added).

The reference found in the latter part of this statement concerning the possibility of appellant taking the stand in his own defense was the first and only indication during the entire side-bar discussion that appellant might testify. The next day when appellant presented his defense, no character witnesses were called on his behalf and his case in chief consisted solely of the testimony of his wife, Eule Farrior, who was not present at the time of the shooting. His wife's testimony related only to events that occurred when appel-

lant was first arrested on the night of the shooting and again following Mr. Fanning's death. At the conclusion of Mrs. Farrior's testimony, the appellant rested his case and stated to the trial court on the record that he did not desire to testify and that his decision in that regard had been made voluntarily.

The Commonwealth argues on appeal that the issue of what prior crimes could be used to impeach *appellant* had not been preserved for appellate review since no *Bighum* hearing [4] was ever requested by the appellant or conducted by the trial court. It is the Commonwealth's contention that the side-bar discussion which occurred at the conclusion of its case in chief concerned only the testimony of the proposed character witnesses, and that no request was made of the trial court by appellant's counsel for a specific ruling on what prior convictions appellant, if he testified, could be cross-examined about by the District Attorney. In light of the above statement by appellant's counsel, we are not entirely certain that a *Bighum* hearing was not requested by appellant, nor that the issue, as it relates to appellant's testimony, has not been preserved for appellate review. *Compare Commonwealth v. Bryant,* 247 Pa.Super. 386, 372 A.2d 880 (1977). However, because of our disposition with respect to the court's ruling concerning the character witnesses, we need not reach the merits of appellant's *Bighum* claim.

a.

■ With respect to the court's ruling concerning the cross-examination of appellant's proposed character witnesses, we will first consider whether the character witnesses could be questioned concerning their knowledge of appellant's 1961 *conviction* for assault, which occurred nineteen (19) years prior to this trial. Appellant proposed to call eleven character witnesses; one had known appellant for three years, one had known him for five years, five had known him for eight years, and two had known him in excess of nineteen years. It was not specified on the record

**4.** *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973).

how long the other two proposed witnesses had known appellant.

This court considered the same issue in *Commonwealth v. Mayfield*, 262 Pa.Super. 96, 396 A.2d 662 (1978). In *Mayfield*, the defendant alleged that the trial court erred in permitting the Commonwealth to cross-examine his character witness, who had known him for two years, concerning a conviction which had occurred eleven years before the trial. Three judges concluded that such cross-examination was proper. The other three members of the court, however, concluded that the conviction was too remote in time to have any bearing on the credibility of the witness, especially since she had only known the defendant for two years.

In this case, appellant's assault conviction occurred nineteen years prior to trial. With respect to the witnesses who had known appellant for substantially shorter periods of time, we are of the opinion that the impeachment value of questions concerning the conviction would be negligible and would be overwhelmingly outweighed by their prejudicial effect. With respect to the two character witnesses who had known appellant at the time of the conviction, however, such questions would have been proper because the conviction was related to the length of time concerning which the witnesses would testify. *See generally Michelson v. U.S.*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Therefore, the trial court's ruling, as it related to the two character witnesses who had known appellant at the time of the conviction was correct. As to the other proposed witnesses, however, the ruling was erroneous.

### b.

Appellant also argues that the court erred in ruling that the Commonwealth would be permitted to cross-examine his proposed reputation witnesses concerning his *arrest* fourteen (14) years prior to trial, which arrest did not result in a conviction. At trial, appellant's objection to the proposed cross-examination was made on the basis that the arrest was too remote in time to be material on the issue of the

witnesses knowledge of appellant's reputation. He now argues, however, that the decision of the Pennsylvania Supreme Court in *Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607 (1981), decided subsequent to his trial, prohibits such cross-examination and that he is therefore entitled to a new trial at which the proposed reputation witnesses may be called to testify without being cross-examined regarding his prior arrest.

The Commonwealth argues that since appellant only objected to the proposed cross-examination on the ground that the arrest was too remote in time, he has not preserved for appellate review the specific objection to such questioning that formed the basis of the court's subsequent decision in *Commonwealth v. Scott.* It is also argued that Scott is "not of constitutional dimension and therefore is only of *prospective* effect."

The Commonwealth, in support of its claim that the appellant's present argument concerning the "arrest" has not been preserved, relies on four cases decided by our Supreme Court. The cases cited, however, do not support the Commonwealth's argument in this regard. *Commonwealth v. Berrios,* 495 Pa. 444, 434 A.2d 1173 (1981) and *Commonwealth v. Klobuchir,* 486 Pa. 241, 405 A.2d 881 (1979), do not involve a situation like the present one. In those cases no change in the law was involved. In *Commonwealth v. Baylis,* 477 Pa. 472, 384 A.2d 1185 (1978), while it involved a change in the law, or more precisely the recognition by the courts of a new claim, the per curiam opinion for the majority states that the new claim was recognized by the Supreme Court some two months prior to the defendant's filing of a suppression motion in which the issue was not raised. In *Commonwealth v. Brown,* 494 Pa. 380, 431 A.2d 905 (1981), the final case relied on by the Commonwealth, the defendant raised the specific objection in the trial court that was later recognized as being valid by the Supreme Court. In that case, the Supreme Court held that, in both civil and criminal cases, a party is entitled to the benefit of changes in the law which occur while his or

her case is pending on direct appeal. Moreover, no reference was made to any distinction between evidentiary and constitutional rulings. As the Court stated, "Certainly fairness demands that relief be granted not only in the first case which successfully contests a rule of law but in all other cases pending on direct appeal which suffer from the same infirmity." *Id.*, 494 Pa. at 385, 431 A.2d at 908. *See also Commonwealth v. Steward*, 276 Pa.Super. 64, 419 A.2d 96 (1980).

■ In this case, appellant objected at trial to the admissibility of any evidence by way of cross-examination concerning his fourteen (14) year old *arrest*. Since the Supreme Court at that time had not yet ruled that arrests which did not subsequently become convictions were inadmissible for such use, appellant had no more reason to raise that specific objection than did the trial court to consider it. Therefore we are satisfied that the issue may be appropriately considered on review. We hold that appellant is entitled to the benefit of the Supreme Court's decision in *Scott* which was decided while his case was pending before this Court on direct appeal. A similar result was reached by our Court in *Commonwealth v. Hankerson*, 298 Pa.Super. 194, 444 A.2d 727 (1982).

c.

Having determined that *Scott* is controlling and that the trial court erred in ruling that appellant's proposed character witnesses could be cross-examined about his 1966 *arrest* and his 1961 *conviction*, we must next consider whether the errors which occurred were harmless. In making this determination we are guided by the standard set forth in *Commonwealth v. Story*,[5] 476 Pa. 391, 383 A.2d 155 (1978):

5. In *Commonwealth v. Story, supra,* our supreme court was called upon to consider whether a trial court's erroneous ruling was prejudicial to the appellant's case in that it caused certain evidence to be *admitted*. In the case at hand, we are called upon to consider whether the trial court's erroneous rulings were prejudicial to the appellant's case in that they caused certain evidence, i.e. testimony from proposed character witnesses, to be *excluded*. Although the

Although this Court has previously held that an error involving state law may be harmless, our cases have not articulated a consistent standard for determining whether an error is harmless. In order to eliminate any confusion which may exist, we hold that the proper standard for determining whether an error involving state law is harmless is the same as the standard this Court applies to federal constitutional error: an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless.

. . . . .

Having articulated the proper standard of proof in determining whether an error is harmless, we must now address the proper definition of harmlessness, for any theory of harmless error must include both the standard of the degree to which an appellate court must be convinced that an error is harmless and the definition of harmlessness. We adopt the standard that an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a " 'reasonable possibility' " that an error " 'might have contributed to the conviction,' " the error is not harmless. *Id.*, 476 Pa. at 405–6, 409, 383 A.2d at 162, 164. (footnotes and citations omitted).

■ The burden of establishing that the errors in this case were "harmless" fell on the Commonwealth since it was the beneficiary of the trial court's rulings. *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Story, supra.* At trial, the Commonwealth called fifteen witnesses to testify during its case in chief. Three of those witnesses, Officer Winfred Hunter, Officer Gerald Nimmo and Detective Edward Gallagher, testified the victim, James Fanning, had independently indicated to each of them, either in response to a question or as a spontaneous declaration, that the appellant

determination we must make differs from that found in *Commonwealth v. Story, supra,* our standard of review does not. *Compare Commonwealth v. Darby*, 473 Pa. 109, 373 A.2d 1073 (1977).

had fired the shot that struck him. Although no one else, other than the victim, claimed to be an eyewitness to the attack by the appellant, three Commonwealth witnesses, Mayme Williams, Julius Blassingale and Otis Wells, placed the appellant at the scene of the crime immediately prior to the shooting. Those witnesses each testified that they saw the appellant sitting in his car with a gun seconds before the shot which killed James Fanning was fired. Testimony was also introduced concerning the subsequent discovery by the police of a gun hidden in appellant's car which ballistic tests indicated could have been the murder weapon.[6] There was also testimony from a Detective Daniel Lynch that appellant stated "Dammit, he died" upon being arrested for Fanning's murder. In the face of this undeniably strong evidence against him, the appellant presented one witness, his wife. In her testimony she disputed only two of the Commonwealth's assertions: 1) that a gun was found in her husband's car the night of the shooting, and 2) that her husband said "Dammit, he died" on being told of Fanning's death. No other witnesses testified on appellant's behalf, consequently the majority of the Commonwealth's case against the appellant remained uncontradicted. The appellant's decision not to call any of his proposed character witnesses, made as a result of the trial court's erroneous rulings that the appellant's proposed character witnesses could be cross-examined about his 1966 arrest and his 1961 conviction, significantly affected his case in chief. In effect the trial court's rulings denied appellant the use of a major portion of his defense.

 It has long been the law that a defendant in a criminal trial may introduce evidence of his own good character in order to attempt to convince the trier of fact of his innocence. *Commonwealth v. Sampson*, 445 Pa. 558,

---

**6.** The bullet which was recovered from the victim's body was too "distorted" to positively identify it as having been fired from the appellant's gun. The ballistic expert who testified for the Commonwealth could only offer his opinion that the bullet which killed James Fanning was "most probably" fired from a gun which was the same make and type as that found in appellant's car.

285 A.2d 480 (1971); McCormick on Evidence, § 191 (2d ed. 1972). As our Court stated in *Commonwealth v. Padden*, 160 Pa.Super. 269, 275, 50 A.2d 722, 725 (1947):

> Evidence of good character is substantive and positive evidence, not a mere make-weight to be considered in a doubtful case, and, according to all our authorities, is an independent factor which may of itself engender a reasonable doubt or produce a conclusion of innocence. *Hanney v. Com.*, 116 Pa. 322, 9 A. 339; *Com. v. Cleary*, 135 Pa. 64, 19 A. 1017; *Com. v. Chester*, 77 Pa.Superior Ct. 388. To be sure, it is to be *considered* with all the other evidence in the case. *Com. v. Dingman*, 26 Pa.Superior Ct. 615. But it is not to be *measured* with or by other evidence. Its probative value, its power of persuasion, does not depend upon, and is not to be measured by, or appraised according to, the might or the infirmity in the Commonwealth's case. *Hanney v. Com.*, supra. Even though, under all the other evidence a jury could reach a conclusion of guilt, still if the character evidence creates a reasonable doubt or establishes innocence a verdict of acquittal must be rendered. *Com. v. Cate*, supra [220 Pa. 138, 69 A. 322].

Consequently, the evidence that the proposed character witnesses would have presented concerning appellant's law abiding reputation, if believed by the jury, *may* have created a reasonable doubt as to his guilt of the crime charged. Thus, we cannot say that the trial court's ruling which resulted in the appellant's decision not to call his character witnesses did not effect the outcome of the case. There is a reasonable possibility that the erroneous rulings *might have* contributed to the appellant's conviction for *first* degree murder. Therefore, the error was not harmless beyond a reasonable doubt and a new trial is required. In this case, because the presentation of the character evidence was almost the appellant's *entire* defense, a new trial is mandated.

Sentence vacated and case remanded for a new trial. Jurisdiction is relinquished.