J. S09006/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JESSE ENGRAM, | : | No. 128 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, February 10, 2011,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0015304-2008

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND ALLEN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 28, 2015**

Following a jury trial, appellant, Jesse Engram, was convicted of first-degree murder and carrying a firearm.  He now appeals the judgment of sentence entered on February 10, 2011, in the Court of Common Pleas of Allegheny County.  We affirm.

The facts, as summarized by the trial court, are as follows.

> On September 22, 2008, at approximately 10:40 P.M.[,] Korey Johnson drove into the Sunoco gas station/convenience store located on Penn Avenue in the Wilkinsburg section of Allegheny County.  Johnson was accompanied by his girlfriend[,] Shermaine Campbell, who was seated in the front passenger seat of Johnson's vehicle. Johnson was driving a rather distinctive purple GMC with heavily tinted windows.  He stopped his vehicle at pump five with the driver's side facing Penn Avenue and Campbell's side facing the store itself.

As this was occurring[,] [appellant] walked across Penn Avenue toward the gas pumps and pulled the hood of his sweatshirt over his head. [Appellant] pulled a pistol from underneath his sweatshirt and walked directly to Johnson's side of the vehicle. [Appellant] fired once through the driver's side window, which was up. He followed that initial shot with eight or nine more shots. The window did not shatter, but instead collapsed as one piece into the vehicle interior after the first shot. After the second shot[,] Campbell opened her door and crawled to the store to escape and request assistance.

City of Pittsburgh police officer William Wagner was working a plainclothes detail inside the convenience store at the time and saw much of the event unfold. Officer Wagner immediately emerged from the store and pursued [appellant] as he fled back across Penn Avenue and behind a building. The foot pursuit ended abruptly when [appellant] "cut a corner," and fled down a side street out of Officer Wagner's sight.

[Appellant] had gotten to the vehicle before Johnson could put it in "park," and the vehicle drifted into a gas pump, where it came to rest. Medics arrived within minutes and attempted to keep Johnson alive for transport and treatment, but he was pronounced dead at the scene. Johnson was shot five times, suffering fatal gun shot wounds to the heart and lung. Ten 9mm casings were recovered at the scene and it was determined that the casings were discharged from the same firearm.

Campbell, visibly shaken and upset, spoke to officers at the scene and stated that she "could not believe they shot him," and when asked specifically who shot Johnson, she responded "LL" three times. Campbell was taken to the homicide office where she was formally interviewed and shown an eight person photo array. She immediately identified [appellant] as the shooter, writing on the array: "this is who I know as LL, this is who shot Korey."

Trial court opinion, 7/17/14 at 7-9 (citations to the record omitted).

Appellant was charged with criminal homicide, firearms not to be carried without a license, and possession of firearms prohibited; the charge of possession of a firearm was severed prior to trial and later withdrawn. On November 8, 2010, appellant proceeded to a jury trial before the Honorable Edward J. Borkowski and was convicted of both counts. Appellant was sentenced to life imprisonment and a consecutive period of two to four years' imprisonment. (Notes of testimony, 2/10/11 at 6, 9.)

On February 22, 2011, appellant filed a timely post-sentence motion,[1] which was denied on April 26, 2011. On May 25, 2011, a timely notice of appeal was filed. Judge Borkowski ordered appellant to file a concise statement of errors complained of on appeal. Defense counsel failed to file a statement, and on April 17, 2012, Christy P. Foreman, Esq., was appointed for purposes of appeal. A Rule 1925(b) statement was filed, and the trial court filed an opinion.

The following issues have been presented for our review.

> I. WHETHER THE VERDICT IN THIS MATTER WAS AGAINST THE WEIGHT OF THE EVIDENCE[?]
>
> II. WHETHER THE VERDICT IN THIS MATTER WAS LEGALLY INSUFFICIENT TO SUSTAIN A

---

[1] The Pennsylvania Rules of Criminal Procedure provide that "a written post-sentence motion shall be filed no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1). Instantly, the 10th day fell on Sunday, February 20, 2011; and Monday, February 21, 2011, was a holiday. Thus, appellant's post-sentence motion was timely filed. *See* 1 Pa.C.S.A. § 1908.

> CONVICTION OF MURDER IN THE FIRST DEGREE AND FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE[?]
>
> III. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED SERGEANT [CHARLES] HENDERSON[2] TO TESTIFY ABOUT MS. CAMPBELL'S STATEMENTS TO THEM UNDER THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE[?]

Appellant's brief at 6.

We begin by reviewing appellant's sufficiency claim. When determining sufficiency of the evidence claims, we must determine whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the verdict winner, was sufficient to enable the fact-finder to find every element of the crime charged beyond a reasonable doubt. **Commonwealth v. Houck**, 102 A.3d 443, 449 (Pa.Super. 2014). The Commonwealth may meet its burden of proving every element beyond a reasonable doubt through wholly circumstantial evidence, and the fact-finder is free to believe all, part, or none of the evidence presented. **Id.**

Appellant argues that the Commonwealth failed to prove that appellant caused the death, and he did so with malice and specific intent to kill. (Appellant's brief at 21.) "The only evidence that the Commonwealth presented was the prior inconsistent recorded statements of

---

[2] Sergeant Henderson was one of the officers who responded to the call about shots fired at the gas station. (Notes of testimony, 11/8-12/10 at 87.)

Shermaine Campbell and Harold Fields, and the trial testimony of Sergeant William Wagner." (*Id.*) As the trial court observes, appellant's argument concerns credibility of witnesses, and goes to the weight of the evidence not to its sufficiency. (*See* trial court opinion, 7/17/14 at 10-11.)

Nevertheless, the evidence is clearly sufficient. To sustain appellant's conviction of first-degree murder, we must conclude that the evidence proved beyond a reasonable doubt the three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. 18 Pa.C.S.A. § 2502(a); *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011). First-degree murder is an intentional killing, *i.e.*, a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(a) and (d); *Commonwealth v. Fears*, 836 A.2d 52, 59 (Pa. 2003).

The evidence established that

> (1) the shooter crossed Penn Avenue towards Sunoco; (2) the shooter pulled his hood over his head, retrieved a gun from within his sweatshirt, and walked directly to Johnson's vehicle; (3) the shooter aimed the gun at Johnson and shot at him through the car window nine times; ([4]) the shooter fled and was chased for a short period by Officer Wagner before escaping; ([5]) Johnson died as a result of a fatal gunshot wounds to his heart and lungs; and ([6]) three eye witnesses identified [a]ppellant as the shooter. While two eye witnesses recanted their identification at trial, the jury had the opportunity to hear their tape recorded statements wherein they identified [a]ppellant as the shooter shortly after the shooting, and the jury was able to weigh the credibility of the identifications. Additionally, the

> jury had the benefit of the unwavering identification of Officer Wagner, who saw [a]ppellant's face for twenty-five seconds, without obstruction, and was trained to focus on facial features.

Trial court opinion, 7/17/14 at 11-12 (citations omitted). The evidence was clearly sufficient to sustain the first degree murder conviction.

Appellant also argues that the Commonwealth introduced insufficient evidence to support the conviction of carrying a firearm without a license as it did not prove beyond a reasonable doubt that appellant concealed a firearm on or about his person. The statute provides "any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S.A. § 6106(a)(1). Sergeant Wagner specifically testified that appellant had a concealed firearm on his person. The sergeant observed appellant pull a pistol out from underneath his coat and walk with the pistol towards Johnson's vehicle. Sergeant Wagner also testified that when appellant reached the vehicle, he repeatedly fired the weapon. Moreover, Campbell and Fields also corroborated that appellant possessed a gun. No relief is due.

Next, we turn to appellant's claim that the verdict was against the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the

> evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis omitted) (citations omitted).

Appellant argues that the testimony of the eyewitnesses was inconsistent and contradictory. He also points to the fact that Sergeant Wagner testified that he saw the shooter's hands and that there were no tattoos. However, at trial, appellant showed his hands which were covered in tattoos. Appellant also points out that the police report does not

indicate that Sergeant Wagner saw anyone standing across the street and walking toward the gas station.

Mindful of our standard of appellate review and its exceptionally narrow scope, we find no basis for relief. The trial judge found that, contrary to appellant's allegations of grave inconsistencies and contradictions in the eyewitness testimony, the evidence supported the jury's verdict. The court addressed appellant's weight-of-the-evidence claim in the following manner:

> The jury heard testimony from Officer Wagner regarding his identification of [a]ppellant as the perpetrator. While [a]ppellant argues that two eye witnesses stated at trial that they could not identify [a]ppellant as the shooter, the jury also heard testimony regarding the initial identifications of [a]ppellant by both witnesses, as well as the threats made to one of the eyewitnesses that accounted for his recantation. The jury was free to assess the credibility of these witnesses, and the jury clearly found that the identifications made in the immediate aftermath of the shooting, and free from outside influence and pressure, were more credible than the recanting testimony at trial.

Trial court opinion, 7/17/14 at 14-15 (footnote omitted). We agree.

Based on the well-reasoned trial court opinion and our review of the record, we conclude that the court acted within its discretion when it determined that the verdicts were not against the weight of the evidence and declined to grant a new trial. Thus, no relief is due.

The final issue presented concerns whether the trial court erred when it allowed Sergeant Henderson to testify about Campbell's statement to

them under the excited utterance rule. Appellant argues that too much time had elapsed for the statements to qualify as excited utterances. He points to the fact that seven to ten minutes of time passed from when Sergeant Henderson arrived on the scene until he heard Campbell make the statement, "I can't believe he did it." Appellant claims this lapse of time, coupled with the sergeant's own testimony that Campbell had calmed down considerably, should have resulted in her statement not qualifying under this rule.

Our supreme court has consistently defined "excited utterance" as:

> a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence in both time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Allen v. Mack*, 28 A.2d 783, 784 (Pa. 1942); *Commonwealth v. Farrior*, 458 A.2d 1356 (Pa.Super. 1983). "[T]here is no clear-cut rule as to the time sequence; whether the actual delay between the event and the statement is sufficient to negate 'spontaneity' must be resolved in light of the particular facts of each case." *Commonwealth v. Pronkoskie*, 383 A.2d 858, 863 (Pa. 1978) (citations omitted).

Upon consideration of the aforementioned factors, we find that Campbell's statement qualifies as an excited utterance and the trial court did

not abuse its discretion. As the Commonwealth observes, on numerous occasions, this court had previously approved the admission into evidence of such declarations notwithstanding interim periods comparable to or even greater than that involved in the present case. *Lininger v. Kromer*, 358 A.2d 89 (Pa.Super. 1976) (2 hours); *Commonwealth v. Cheeks*, 223 A.2d 291, 293 (Pa.Super. 1966) (45 minutes); *Commonwealth v. Soudani*, 155 A.2d 227 (Pa.Super. 1959), *affirmed*, 159 A.2d 687 (Pa. 1960); *cert. denied*, 364 U.S. 886 (1960) (45 minutes).

Additionally, we disagree that the evidence demonstrated that Campbell had regained her composure prior to making the statement. The trial court found that she was "visibly shaken and upset" and the testimony of Henderson supports this statement. Henderson emphasized "she was still very upset, as you can imagine." (Notes of testimony, 11/8/10 at 91.) Campbell remained mere feet from the scene of the murder she had just witnessed. Thus, appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2015