J-A26040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TONY M. SCHILDT, | |
| Appellant | No. 502 MDA 2015 |

Appeal from the Judgment of Sentence April 6, 2011
in the Court of Common Pleas of Franklin County
Criminal Division at No.: CP-28-CR-0001053-2010

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                        **FILED NOVEMBER 24, 2015**

Appellant, Tony M. Schildt, appeals from the judgment of sentence imposed following his jury conviction of driving under the influence of alcohol (DUI) and firearm not to be carried without a license.[1]  We affirm.

The relevant factual and procedural history of this case is as follows. On March 23, 2010, at approximately 10:00 a.m., Appellant reported to the Franklin County Adult Probation Office.[2]  Probation Officer Brooke Alleman observed that he exhibited signs of intoxication.  After Appellant admitted to driving a van to the office, probation officers administered two breathalyzer

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(c) and 18 Pa.C.S.A. § 6106(a)(2), respectively.

[2] Appellant was on probation in an altered documents case involving a license plate.  (**See** N.T. Sentencing, 4/06/11, at 3).

tests, which yielded positive results. Appellant consented to a search of the van. Police Officer Rob Peterson responded to the scene and, in response to questioning, Appellant told the officer that there was a loaded gun in the vehicle. Probation officers searched the van and recovered empty beer cans, liquor bottles, and a loaded handgun. Officer Peterson arrested Appellant and he submitted to a blood test. Testing showed that his blood alcohol content (BAC) was 0.164 percent.

The case proceeded to a one-day jury trial on March 24, 2011. On cross-examination, Officer Peterson testified in pertinent part as follows:

Q. Did you notice that there's no registration number for the car, no VIN number for the car?

A. I did notice that.

Q. Did you ever check to see if that car was registered to [Appellant]?

A. Yes, I did. I actually did that upon arrival, when [Probation Officer] Joe McLaughlin told me that was his vehicle.

Q. So you called the information in to your dispatch and they ran it?

A. Yes, sir.

Q. On the computer?

A. Yes, sir.

Q. And did they tell you it was registered to him?

A. Yes.

Q. They said it was?

- 2 -

A. (Nods head affirmatively).

Q. Okay. And that was based on the license plate number that you read off in the back of the vehicle there?

A. Yes.

Q. Was there actually a registration card presented to you by [Appellant]?

A. No.

Q. Okay.

A. I believe my report also reflects that the registration came back to [Appellant].

Q. Is that a supplement maybe?

A. That was my original report.

Q. Oh, I guess I missed that. So you were satisfied from your run of the Department of Motor Vehicles records that this vehicle was registered to him?

A. Yes.

(N.T. Trial, 3/24/11, at 56-57).

Appellant testified in his defense and stated that the van was not registered to him. (*See id.* at 87). He further testified that he paid an individual he knew only by the first name "Don" for a ride to the probation office in the van. (*Id.* at 97; *see id.* at 93-94).

At the conclusion of trial, the jury found Appellant guilty of the above-mentioned offenses. The court held a sentencing hearing on April 6, 2011, at which the Commonwealth advised that a records check showed the van was not registered to Appellant. The trial court sentenced Appellant to a

term of not less than six nor more than sixty months' incarceration on the DUI conviction, followed by twenty-four months' probation on the firearms conviction. Appellant filed a timely post-sentence motion, and the trial court held a hearing on May 18, 2011. The court did not rule on the motion, and on February 25, 2015, the clerk of courts entered an order denying it by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a), (c).

On March 13, 2015, Appellant filed a timely notice of appeal. On April 1, 2015, he filed a timely concise statement of errors, claiming that the trial court should have granted a new trial because the Commonwealth presented false testimony regarding the vehicle registration. *See* Pa.R.A.P. 1925(b); (*see also* Rule 1925(b) Statement 4/01/15, at unnumbered pages 1-2). The court filed an opinion on April 28, 2015. *See* Pa.R.A.P. 1925(a).

Appellant raises one issue for our review:

> 1. Should the [t]rial [c]ourt have arrested judgment or, alternatively, granted a new trial because false testimony was presented at trial by the Commonwealth when Officer Peterson falsely testified that the van in this case was registered to [Appellant], which was a material fact, and there is a reasonable likelihood that this false testimony affected the jury's verdict?

(Appellant's Brief, at 11).

> On appeal from an order of the trial court denying an appellant's motion for a new trial, our review is limited to a determination of whether there has been an abuse of discretion or an error of law on the part of the trial court. In the absence of either of these elements, the order denying a new trial will not be disturbed.

*Commonwealth v. Farrior*, 458 A.2d 1356, 1358 (Pa. Super. 1983) (citations omitted).

- 4 -

In his issue on appeal, Appellant argues "false testimony was presented at trial by the Commonwealth when Officer Peterson falsely testified that the van in this case was registered to [Appellant.]" (Appellant's Brief, at 17) (most capitalization omitted). He asserts that the outcome of his trial may have been different if Officer Peterson had not provided this testimony. (***See id.***). He further contends that the prosecution violated its duty to disclose exculpatory information and to correct false testimony by failing to determine the registration of the van before the jury returned its verdict. (***See id.*** at 19). To support his argument, Appellant relies on case law involving ***Brady***[3] violations. (***See id.*** at 17). This issue does not merit relief.

> To prove a ***Brady*** violation, Appellant must demonstrate that: (1) the prosecution concealed evidence; (2) which evidence was either exculpatory or impeachment evidence favorable to him and; (3) he was prejudiced by the concealment. In order to prove prejudice, Appellant must show a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Stated differently, the undisclosed evidence must be material to guilt or punishment. . . . Finally, we note that [t]here is no ***Brady*** violation when the appellant knew, or with reasonable diligence, could have uncovered the evidence in question.

***Commonwealth v. Bomar***, 104 A.3d 1179, 1189-90 (Pa. 2014), *cert. denied sub nom.* ***Bomar v. Pennsylvania***, 2015 WL 2128333 (U.S. filed Oct. 5, 2015) (citations and quotation marks omitted). In the context of a

---

[3] ***Brady v. Maryland***, 373 U.S. 83 (1963).

***Brady*** claim, "false testimony is material—and a new trial is required—if it could in any reasonable likelihood have affected the judgment of the jury." ***Commonwealth v. Wallace***, 455 A.2d 1187, 1191 (Pa. 1983) (citations, internal quotation marks, and emphasis omitted). Additionally, "[t]he burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed evidence." ***Commonwealth v. Cam Ly***, 980 A.2d 61, 75 (Pa. 2009) (citation omitted).

Here, Appellant has not shown that the Commonwealth withheld or concealed any evidence or that it presented false testimony. Rather, the record demonstrates that, on direct examination, the Commonwealth did not elicit any testimony from Officer Peterson regarding registration of the van.[4] (***See*** N.T. Trial, at 46-54). Thereafter, during cross-examination, defense counsel raised the issue of vehicle registration, and Officer Peterson testified inaccurately that the van was registered to Appellant. (***See id.*** at 56). At sentencing, the Commonwealth advised the court of this inaccuracy. (***See*** N.T. Sentencing, at 4). The court found "it is clear that at the time of trial the Assistant District Attorney was unaware that the vehicle was not registered to [Appellant]." (Trial Court Opinion, 4/28/15, at 5). This finding is supported by the record. Further, Appellant has not explained why he

_____

[4] The Commonwealth explains that it did not solicit such testimony because vehicle registration was not an element of the charged offenses. (***See*** Commonwealth's Brief, at 4 n.3).

- 6 -

could not have obtained a records check prior to trial, and "[t]here is no **Brady** violation when the appellant knew, or with reasonable diligence, could have uncovered the evidence in question." **Bomar**, **supra** at 1190 (citation omitted).

Moreover, we agree with the trial court that the Commonwealth provided ample evidence that Appellant drove the van to the probation office, regardless of whether it was registered to him. (**See** Trial Ct. Op., at 5-7). Specifically, Probation Officer Alleman testified on direct examination:

> Q. And what did you do with that information [regarding Appellant's alcohol use the night before]?
>
> A. I asked [Appellant] at that point how he got to the Probation Department. I asked if he had had a ride, did he drive. When he stated that he drove, I asked Officer Markel . . . to get a breathalyzer[.]
>
> *    *    *
>
> Q. While waiting for Officer Peterson to respond what occurred?
>
> A. I was speaking with [Appellant] again. . . . [H]e wasn't as honest about his drinking as he could have been, and we discussed how he got there. He admitted he was driving a van.

(N.T. Trial, at 10, 12).

> On cross-examination, her testimony remained consistent:
>
> Q. Okay. And having this concern in mind then, you proceeded to ask him whether he had driven his vehicle from Waynesboro, where you didn't believe he lived, to your office, is that correct?
>
> A. Actually, I asked him if he drove there before the first breath test.
>
> Q. Okay. And what exactly did he answer you?

A. He stated yes, he did drive from Waynesboro.

(*Id.* at 20; *see also id.* at 21-24).

Similarly, Officer Peterson testified: "[Appellant] admitted to me that he drove to the Probation Office. Told me the blue van in the front of the building was the vehicle he drove there in." (*Id.* at 47). Thus, the officers' testimony strongly supports the jury's conclusion that Appellant drove the van to the probation office. Therefore, Appellant has failed to show that he was prejudiced by the Commonwealth's purported concealment of the registration information. *See Bomar*, *supra* at 1189. Accordingly, Appellant's sole issue on appeal does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2015