J-A08019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VYANTE ANTON GREEN | : | |
| | : | |
| Appellant | : | No. 920 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0005511-2018

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 16, 2025**

Vyante Anton Green appeals from the judgment of sentence following his convictions for third-degree murder and aggravated assault after a retrial.[1] Because we conclude that the trial court erred in prohibiting Green from calling character witnesses, we vacate Green's judgment of sentence and remand for a new trial.

In February 2020, Green was found guilty of first-degree murder, attempted criminal homicide, aggravated assault, and firearms not to be carried without a license. Green filed a direct appeal to this Court. We found no error or abuse of discretion in the trial court's refusal to deliver a self-defense instruction. *See Commonwealth v. Green*, 273 A.3d 1080, 1087 (Pa.Super. 2022). However, we vacated Green's judgment of sentence

_____

[1] 18 Pa.C.S.A. §§ 2502(c) and 2702(a)(1), respectively.

because we found the trial court erred when it refused to give the jury an instruction on voluntary manslaughter or "imperfect self-defense." *Id.* at 1089. We remanded the case for a new trial. *Id.*

A second trial was held in October 2023. The trial court summarized the facts at the second trial as follows:

> [On] December 31, 2017, a New Year's Eve party was held at 1131 Turner Street in the City of Allentown. Both Kenyatta Eutsey and Dimitri Joseph were invited guests to this celebration. [Green], who learned about the party through social media, arrived separately, but was also invited to attend the party . . .
>
> Shortly after midnight, shots were fired by a shooter who was later identified to be [Green]. Various witnesses who attended the party, and were in close proximity to the shooting, heard gunshots . . .
>
> [Mr. Joseph] was enjoying himself without incident, and after the "ball dropped," he looked for Mr. Eutsey. He found him chatting with other people, and with others they took "group photos." Mr. Eutsey, who was intoxicated, told Mr. Joseph that "he felt like taking someone's phone." Mr. Joseph, who thought Mr. Eutsey was joking, did not take him seriously. However, Mr. Eutsey got up from his seat, and Mr. Joseph saw him "snatch" a phone. It was the phone of [Green's]. He then saw "the person" ([Green]) pull out a firearm and point it at Mr. Eutsey. He then shot Mr. Eutsey twice. Mr. Eutsey went down, and [Green] scanned the room until he fixed his eyes on Mr. Joseph. The two were approximately 20-25 feet apart when [Green] shot Mr. Joseph.
>
> Mr. Joseph was struck three times and [sustained life-threatening] injuries . . .
>
> [Green] testified at his earlier trial, and his testimony, both direct and cross-examination, was introduced into evidence at the retrial through the testimony of Detective Kevin Mriss. [Green], who testified that he always carried a gun, admitted to shooting both Mr. Eutsey and Mr. Joseph.

- 2 -

He did so over his "snatched" cell phone. He did so even though he never saw Mr. Eutsey or Mr. Joseph with a weapon. He pulled his .32 caliber revolver from his right pocket and shot Mr. Eutsey when Mr. Eutsey refused to return his cell phone. He also alleged that Mr. Eutsey either tried to "fake swing or try to swing," [Green] "weaved," and fired the first shot. No other witnesses saw Mr. Eutsey do anything like that.

The testimony is extensive, but a short excerpt of how [Green] shot Mr. Eutsey is found in the following testimony:

[DEFENSE COUNSEL]: Explain what you did in response to that swing.

[MR. GREEN]: So when the swing came, I just leaned back. The firearm was still pointed at the individual [Eutsey]. It was just a quick reaction and it just discharged.

Q: And you fired?

A: Correct.

Q: And you pulled the trigger?

A: Yes, I did.

Q: And what happened after you pulled the trigger that first shot?

A: I believe I shot again, too.

Q: What happened to the person, if anything, that you shot between the first shot and the second shot?

A: He fell down.

Q: Did he fall down between the first shot and the second shot or after you fired you said two shots at him?

A: By the time the second shot hit him, he was dropping.

Q: And then what did you do?

A: After that is when I seen the second individual start coming towards the direction I was heading in. But, like I said, his hand was covered up. I didn't know if he was trying to pull a firearm out or not. At that time I – wasn't trying to

wait to get shot. I turned around and started firing at the second individual [Mr. Joseph].

[Green] then fled the scene, eventually making his way to a club, Catch 22. [Green], who had been drinking Hennessey at the party, claimed he was intoxicated by the time he reached Catch 22. He learned the next day that one person [Mr. Eutsey] was dead, and one person was "seriously injured or clinging to life." He changed his clothes and got rid of the gun, and made plans to travel to New York.

Trial Court Opinion, filed 6/6/24, at 4-9 (footnotes omitted).

Prior to his second trial, Green indicated that he sought to call character witnesses to testify about his reputation in the community as a peaceful, non-violent person. The Commonwealth asserted that it would impeach Green's character witnesses with evidence of Green's prior bad acts that did not result in convictions. Green filed a motion *in limine* to preclude this impeachment. The trial court held a hearing on the motion on September 27, 2023, at which potential character witnesses appeared. *See* N.T., 9/27/23, at 3, 11. The following exchange occurred between the trial court and defense counsel at the hearing:

THE COURT: . . . So this is the problem that you have. Your client – there's a question whether character evidence is even relevant in this case. Your client took the stand in this courtroom and admitted to shooting Kenyatta Eutsey two times and admitted to shooting Mr. Joseph and severely injuring Mr. Joseph. So why is character evidence relevant?

Now I'm going to read you the cases, which basically say that in this type of a case character evidence isn't even relevant. Maybe I'll start with that, and then you can respond to it.

[DEFENSE COUNSEL]: Okay.

- 4 -

THE COURT: I know you're very familiar with case law, and I'm assuming you've read ***Commonwealth v. Kim***, [888 A.2d 847 (Pa.Super. 2005)], which has been examined subsequently in ***Commonwealth v. Saylor*** and approved, and that is identified as 2021 WL 797187 (Pa.Super. 2021.)

And it says the following: Pennsylvania law is clear that while character evidence is admissible to prove that a defendant did not commit the charged crime, it is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity. In this regard, the diminished capacity defense concedes criminal liability for murder but asserts that appellant lacked the capacity to form the specific intent to kill. Therefore, good character evidence is not admissible to support a diminished capacity defense.

So why is character evidence even relevant in this case?

[DEFENSE COUNSEL]: I mean, we're not – so diminished capacity --

THE COURT: Well, first to third or voluntary manslaughter, as the case may be.

[DEFENSE COUNSEL]: But I don't – we're not really arguing diminished capacity. I mean, we're potentially arguing voluntary manslaughter. Depending on how the testimony comes out, the Court will have to make rulings again on self-defense . . .

I mean, [it's] -- an assertion of imperfect self-defense or self-defense, I think it is certainly relevant whether or not he is a peaceful, nonviolent person. If he has a reputation for being a peaceful, nonviolent person, I think that is relevant on whether or not he acted with respect to self-defense . . .

[THE COURT]: So we're sort of parsing over what diminished capacity means, but clearly ***Kim*** and ***Saylor*** say that if he is conceding he did the shooting, I'm not going to permit you to present character witnesses.

So what that means for your motion is that at this point it's going to be denied without prejudice in case the defense is

- 5 -

something other than what your client said on the stand at the first trial.

[DEFENSE COUNSEL]: I respect the Court's ruling. You know, I do not think that we are arguing a diminished capacity defense.

*Id.* at 5-10.

At trial, defense counsel renewed his request to call character witnesses. *See* N.T., 10/3/23, at 301-02; N.T., 10/4/23, at 169-70. Defense counsel argued that "this is a self-defense or manslaughter case and the character for nonviolence is relevant." N.T., 10/4/23, at 170. The trial court, citing *Kim*, reiterated its decision to exclude character witnesses because counsel "conceded that [his] client shot Mr. Eutsey and Mr. Joseph." *Id.* at 169.

The jury found Green guilty of third-degree murder and aggravated assault. He was sentenced to an aggregate term of 30 to 60 years' imprisonment. Green filed a post-sentence motion, which was denied. This appeal followed.

Green raises the following issues:

1. Whether the trial court erred in prohibiting Green, who had no criminal convictions for any crimes of violence, from calling character witnesses who would have testified to his excellent reputation in the community for being a peaceful, non-violent person in a homicide and assault case in which Green's defenses were that he acted in self-defense, he at most committed voluntary manslaughter rather than murder, and he did not act with the malice or the specific intent to kill required to prove the crimes with which he was charged.

2. Whether the trial court erred in making its own credibility determinations and denying Green's request for a self-defense jury instruction where the Commonwealth introduced Green's prior testimony that he acted to

- 6 -

> defend himself from two much bigger men who robbed
> him of his phone, threatened him, tried to punch him,
> and appeared to be armed.

Green's Br. at 4.

Green first argues that the trial court erred in prohibiting him from calling character witnesses at trial who would have testified that he had a reputation in the community for being peaceful and non-violent. *Id.* at 29. He maintains that such testimony would have been relevant because he was charged with violent crimes and "someone with a reputation for peacefulness is less likely to commit a murder and aggravated assault for no real reason." *Id.* Green conceded that he shot Eutsey and Joseph, "[b]ut [he] testified at the prior trial that he acted in self-defense after Eutsey, who was drunk and twice his size, robbed him, threatened him, and tried to assault him further while Joseph rushed over to assist Eutsey and looked like he may have been reaching for a gun." *Id.* at 8. He points out that his "defenses at trial were that he acted in self-defense, committed at most voluntary manslaughter, and did not act with the *mens rea*[] necessary for attempted murder, murder, or aggravated assault." *Id.* at 26. Green argues that since the shooting was justified, and he did not act with the intent to kill or malice, the court should have allowed him to call character witnesses. *Id.*

Green further points out that the trial court "confused [his] self-defense, voluntary manslaughter, and lack of *mens rea* defenses for diminished capacity defenses[.]" *Id.* at 29. He agrees with the trial court that character evidence is not relevant to a diminished capacity defense. However, he asserts

that he did not argue a diminished capacity defense. *Id.* at 38. Green points out that he "did not argue that he had some sort of mental condition, cognitive limitation, or state of intoxication such that he could not form the specific intent to kill," as required for a diminished capacity defense. *Id.* at 40. Green maintains that the court "confused the nature of the defenses" and "a defendant's good character for non-violence is relevant in a self-defense homicide case." *Id.*

Green further emphasizes that he had character witnesses available and offered to put their names and dates of birth on the record. *Id.* at 6, 42. He argues that had he been permitted to call character witnesses, the Commonwealth would not have been permitted to use any alleged prior bad acts evidence to impeach because he had no prior convictions for violent crimes. *Id.* at 42-43. He notes that under Pa.R.E. 405(a)(2), "[i]n a criminal case, on cross-examination of a character witness, inquiry into allegations of other criminal conduct by the defendant, not resulting in conviction, is not permissible." Green points out that any proposed evidence of prior criminal acts "would have simply amounted to a backdoor method of smearing [his] character with unreliable hearsay evidence that would have been otherwise irrelevant and inadmissible." *Id.* at 47.

Regarding prejudice, Green cites ***Commonwealth v. Weiss***, 606 A.2d 439 (Pa. 1992), to emphasize that the credibility of the witnesses was of utmost importance in this case where he testified that he acted in self-defense while Joseph testified that he overreacted and shot Eutsey over a phone. *Id.*

at 34-35. Green posits that "[h]ad the jury heard that Green had a reputation in the community for being a peaceful person, the jury may well have acquitted." *Id.* at 42. He thus maintains that the court's error in prohibiting him from calling character witnesses was not harmless. *Id.* at 31.

Character evidence is generally inadmissible in criminal cases to prove that on a particular occasion the person acted in accordance with the character or trait, but "a defendant may offer evidence of the defendant's pertinent trait[.]" Pa.R.E. 404(a)(1), (a)(2)(A). "[T]he courts of this Commonwealth have long recognized the importance of character evidence." *In re R.D.*, 44 A.3d 657, 668 (Pa.Super. 2012). As this Court has stated:

> It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has proper relation to the subject matter of the charge at issue. Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.
>
> It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence.

*Commonwealth v. Goodmond*, 190 A.3d 1197, 1201 (Pa.Super. 2018) (citation and internal quotation marks omitted). Thus, "[e]vidence of good

character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty." ***Commonwealth v. Alceus***, 315 A.3d 853, 860 (Pa.Super. 2024) (citation omitted). "When character evidence is offered, the jury must be instructed that evidence of the defendant's good character alone may create a reasonable doubt as to his or her guilt, resulting in acquittal." ***Id.; see also Commonwealth v. Scott***, 436 A.2d 607, 611 n.1 (Pa. 1981).

Further, "character evidence is vital to the jury's determination of credibility, and that by creating a reasonable doubt, that evidence may produce acquittal." ***Commonwealth v. Harris***, 785 A.2d 998, 1002 (Pa.Super. 2001). Indeed, "where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance[.]" ***Weiss***, 606 A.2d at 442; ***see also Commonwealth v. Morgan***, 739 A.2d 1033, 1038 (Pa. 1999) (finding that trial court's ruling, which resulted in appellant's decision not to call character witnesses, was reversible error where there was no medical evidence presented nor any eyewitnesses to the offenses, and the prosecution of appellant was based upon the credibility of witnesses).

Here, Green was charged with violent crimes. Thus, evidence of his reputation for non-violent behavior was relevant and admissible. Since Green testified that he acted in self-defense, his credibility was "of paramount importance." ***Weiss***, 606 A.2d at 442. As such, evidence of Green's non-violent character would have bolstered his credibility and would have been helpful to his defense. Accordingly, Green should have been permitted to

introduce evidence of his good character, and the trial court erred in prohibiting such evidence.

The trial court relied on **Kim** and found that character evidence was not relevant or admissible because Green conceded he committed the shooting. **See** Trial Ct. Op. at 13-14. However, the court's reliance on **Kim** is misplaced. In **Kim**, the appellant conceded that he shot and killed the victim but claimed diminished capacity, *i.e.*, he admitted criminal liability for the murder, but argued that he lacked the capacity to form the specific intent to kill. 888 A.2d at 853. The jury found the appellant guilty but mentally ill of first-degree murder. **Id.** at 850. On appeal, the appellant asserted that the trial court erred in failing to instruct the jury as to his reputation for peacefulness. **Id.** at 853. The appellant argued that "evidence of [his] general peaceful character could have rebutted the Commonwealth's evidence with regard to appellant's specific intent to kill" and that if presented with appellant's character evidence, the jury "could have rendered a verdict of not guilty, or a verdict of a lesser degree of murder." **Id.** In rejecting this claim, this Court explained:

> . . . Pennsylvania law is clear that while character evidence is admissible to prove that a defendant did not commit the charged crime, it is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity. In this regard, the diminished capacity defense concedes criminal liability for murder but asserts that appellant lacked the capacity to form the specific intent to kill. Therefore, good character evidence [is] not admissible to support a diminished capacity defense.

**Id.** (cleaned up).

Here, Green did not argue a diminished capacity defense. Rather, he argued that he acted in self-defense, committed at most voluntary manslaughter, and did not act with the *mens rea* necessary for attempted murder, murder, or aggravated assault. Therefore, **Kim** is inapplicable to the present case.

Since we have concluded that the court erred in precluding character evidence, we must now determine if that error was harmless. "An error is harmless where the uncontradicted evidence of guilt is so overwhelming that, by comparison, the error is insignificant." **Commonwealth v. Hoover**, 16 A.3d 1148, 1150 (Pa.Super. 2011). It is the Commonwealth's burden to establish harmlessness beyond a reasonable doubt. **Commonwealth v. Yocolano**, 169 A.3d 47, 53 (Pa.Super. 2017). Further,

> [t]he Commonwealth can meet its burden of showing harmlessness by persuading us the error did not prejudice the appellant or did so to a *de minimis* extent, and/or by persuading us the properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Hoover**, 16 A.3d at 1150.

Given the importance of credibility in the instant case, we cannot find the error to be harmless beyond a reasonable doubt. The character witnesses would have strengthened Green's credibility, and the jury may have been more likely to credit his theory that he acted in self-defense. **See Commonwealth v. Farrior**, 458 A.2d 1356, 1364 (Pa.Super. 1983) (remanding for new trial because trial court's ruling that resulted in

- 12 -

defendant's decision not to call character witnesses was not harmless; the proposed character witnesses would have presented evidence concerning defendant's law-abiding reputation, which, if believed by the jury, may have created a reasonable doubt as to his guilt and resulted in acquittal).[2] Based on the foregoing, and after our review of the record, we conclude that it is necessary to remand for a new trial. In view of our disposition of this issue, we need not address Green's remaining issue.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2025

---

[2] The Commonwealth argues in a brief footnote that the lack of character witnesses did not prejudice Green because the evidence against him was overwhelming. Commonwealth's Br. at 12 n.1. However, the Commonwealth fails to offer any support for this claim or further develop it. As previously set forth, the Commonwealth had the burden to establish harmlessness beyond a reasonable doubt. Thus, the Commonwealth failed to meet its burden.

J-A08019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VYANTE ANTON GREEN | : | |
| | : | |
| Appellant | : | No. 920 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0005511-2018

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 16, 2025**

Vyante Anton Green appeals from the judgment of sentence following his convictions for third-degree murder and aggravated assault after a retrial.[1] Because we conclude that the trial court erred in prohibiting Green from calling character witnesses, we vacate Green's judgment of sentence and remand for a new trial.

In February 2020, Green was found guilty of first-degree murder, attempted criminal homicide, aggravated assault, and firearms not to be carried without a license. Green filed a direct appeal to this Court. We found no error or abuse of discretion in the trial court's refusal to deliver a self-defense instruction. *See Commonwealth v. Green*, 273 A.3d 1080, 1087 (Pa.Super. 2022). However, we vacated Green's judgment of sentence

_____

[1] 18 Pa.C.S.A. §§ 2502(c) and 2702(a)(1), respectively.

because we found the trial court erred when it refused to give the jury an instruction on voluntary manslaughter or "imperfect self-defense." *Id.* at 1089. We remanded the case for a new trial. *Id.*

A second trial was held in October 2023. The trial court summarized the facts at the second trial as follows:

> [On] December 31, 2017, a New Year's Eve party was held at 1131 Turner Street in the City of Allentown. Both Kenyatta Eutsey and Dimitri Joseph were invited guests to this celebration. [Green], who learned about the party through social media, arrived separately, but was also invited to attend the party . . .
>
> Shortly after midnight, shots were fired by a shooter who was later identified to be [Green]. Various witnesses who attended the party, and were in close proximity to the shooting, heard gunshots . . .
>
> [Mr. Joseph] was enjoying himself without incident, and after the "ball dropped," he looked for Mr. Eutsey. He found him chatting with other people, and with others they took "group photos." Mr. Eutsey, who was intoxicated, told Mr. Joseph that "he felt like taking someone's phone." Mr. Joseph, who thought Mr. Eutsey was joking, did not take him seriously. However, Mr. Eutsey got up from his seat, and Mr. Joseph saw him "snatch" a phone. It was the phone of [Green's]. He then saw "the person" ([Green]) pull out a firearm and point it at Mr. Eutsey. He then shot Mr. Eutsey twice. Mr. Eutsey went down, and [Green] scanned the room until he fixed his eyes on Mr. Joseph. The two were approximately 20-25 feet apart when [Green] shot Mr. Joseph.
>
> Mr. Joseph was struck three times and [sustained life-threatening] injuries . . .
>
> [Green] testified at his earlier trial, and his testimony, both direct and cross-examination, was introduced into evidence at the retrial through the testimony of Detective Kevin Mriss. [Green], who testified that he always carried a gun, admitted to shooting both Mr. Eutsey and Mr. Joseph.

- 2 -

He did so over his "snatched" cell phone. He did so even though he never saw Mr. Eutsey or Mr. Joseph with a weapon. He pulled his .32 caliber revolver from his right pocket and shot Mr. Eutsey when Mr. Eutsey refused to return his cell phone. He also alleged that Mr. Eutsey either tried to "fake swing or try to swing," [Green] "weaved," and fired the first shot. No other witnesses saw Mr. Eutsey do anything like that.

The testimony is extensive, but a short excerpt of how [Green] shot Mr. Eutsey is found in the following testimony:

[DEFENSE COUNSEL]: Explain what you did in response to that swing.

[MR. GREEN]: So when the swing came, I just leaned back. The firearm was still pointed at the individual [Eutsey]. It was just a quick reaction and it just discharged.

Q: And you fired?

A: Correct.

Q: And you pulled the trigger?

A: Yes, I did.

Q: And what happened after you pulled the trigger that first shot?

A: I believe I shot again, too.

Q: What happened to the person, if anything, that you shot between the first shot and the second shot?

A: He fell down.

Q: Did he fall down between the first shot and the second shot or after you fired you said two shots at him?

A: By the time the second shot hit him, he was dropping.

Q: And then what did you do?

A: After that is when I seen the second individual start coming towards the direction I was heading in. But, like I said, his hand was covered up. I didn't know if he was trying to pull a firearm out or not. At that time I – wasn't trying to

wait to get shot. I turned around and started firing at the second individual [Mr. Joseph].

[Green] then fled the scene, eventually making his way to a club, Catch 22. [Green], who had been drinking Hennessey at the party, claimed he was intoxicated by the time he reached Catch 22. He learned the next day that one person [Mr. Eutsey] was dead, and one person was "seriously injured or clinging to life." He changed his clothes and got rid of the gun, and made plans to travel to New York.

Trial Court Opinion, filed 6/6/24, at 4-9 (footnotes omitted).

Prior to his second trial, Green indicated that he sought to call character witnesses to testify about his reputation in the community as a peaceful, non-violent person. The Commonwealth asserted that it would impeach Green's character witnesses with evidence of Green's prior bad acts that did not result in convictions. Green filed a motion *in limine* to preclude this impeachment. The trial court held a hearing on the motion on September 27, 2023, at which potential character witnesses appeared. *See* N.T., 9/27/23, at 3, 11. The following exchange occurred between the trial court and defense counsel at the hearing:

THE COURT: . . . So this is the problem that you have. Your client – there's a question whether character evidence is even relevant in this case. Your client took the stand in this courtroom and admitted to shooting Kenyatta Eutsey two times and admitted to shooting Mr. Joseph and severely injuring Mr. Joseph. So why is character evidence relevant?

Now I'm going to read you the cases, which basically say that in this type of a case character evidence isn't even relevant. Maybe I'll start with that, and then you can respond to it.

[DEFENSE COUNSEL]: Okay.

THE COURT: I know you're very familiar with case law, and I'm assuming you've read ***Commonwealth v. Kim***, [888 A.2d 847 (Pa.Super. 2005)], which has been examined subsequently in ***Commonwealth v. Saylor*** and approved, and that is identified as 2021 WL 797187 (Pa.Super. 2021.)

And it says the following: Pennsylvania law is clear that while character evidence is admissible to prove that a defendant did not commit the charged crime, it is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity. In this regard, the diminished capacity defense concedes criminal liability for murder but asserts that appellant lacked the capacity to form the specific intent to kill. Therefore, good character evidence is not admissible to support a diminished capacity defense.

So why is character evidence even relevant in this case?

[DEFENSE COUNSEL]: I mean, we're not – so diminished capacity --

THE COURT: Well, first to third or voluntary manslaughter, as the case may be.

[DEFENSE COUNSEL]: But I don't – we're not really arguing diminished capacity. I mean, we're potentially arguing voluntary manslaughter. Depending on how the testimony comes out, the Court will have to make rulings again on self-defense . . .

I mean, [it's] -- an assertion of imperfect self-defense or self-defense, I think it is certainly relevant whether or not he is a peaceful, nonviolent person. If he has a reputation for being a peaceful, nonviolent person, I think that is relevant on whether or not he acted with respect to self-defense . . .

[THE COURT]: So we're sort of parsing over what diminished capacity means, but clearly ***Kim*** and ***Saylor*** say that if he is conceding he did the shooting, I'm not going to permit you to present character witnesses.

So what that means for your motion is that at this point it's going to be denied without prejudice in case the defense is

- 5 -

> something other than what your client said on the stand at the first trial.
>
> [DEFENSE COUNSEL]: I respect the Court's ruling. You know, I do not think that we are arguing a diminished capacity defense.

*Id.* at 5-10.

At trial, defense counsel renewed his request to call character witnesses. *See* N.T., 10/3/23, at 301-02; N.T., 10/4/23, at 169-70. Defense counsel argued that "this is a self-defense or manslaughter case and the character for nonviolence is relevant." N.T., 10/4/23, at 170. The trial court, citing *Kim*, reiterated its decision to exclude character witnesses because counsel "conceded that [his] client shot Mr. Eutsey and Mr. Joseph." *Id.* at 169.

The jury found Green guilty of third-degree murder and aggravated assault. He was sentenced to an aggregate term of 30 to 60 years' imprisonment. Green filed a post-sentence motion, which was denied. This appeal followed.

Green raises the following issues:

1. Whether the trial court erred in prohibiting Green, who had no criminal convictions for any crimes of violence, from calling character witnesses who would have testified to his excellent reputation in the community for being a peaceful, non-violent person in a homicide and assault case in which Green's defenses were that he acted in self-defense, he at most committed voluntary manslaughter rather than murder, and he did not act with the malice or the specific intent to kill required to prove the crimes with which he was charged.

2. Whether the trial court erred in making its own credibility determinations and denying Green's request for a self-defense jury instruction where the Commonwealth introduced Green's prior testimony that he acted to

- 6 -

> defend himself from two much bigger men who robbed him of his phone, threatened him, tried to punch him, and appeared to be armed.

Green's Br. at 4.

Green first argues that the trial court erred in prohibiting him from calling character witnesses at trial who would have testified that he had a reputation in the community for being peaceful and non-violent. *Id.* at 29. He maintains that such testimony would have been relevant because he was charged with violent crimes and "someone with a reputation for peacefulness is less likely to commit a murder and aggravated assault for no real reason." *Id.* Green conceded that he shot Eutsey and Joseph, "[b]ut [he] testified at the prior trial that he acted in self-defense after Eutsey, who was drunk and twice his size, robbed him, threatened him, and tried to assault him further while Joseph rushed over to assist Eutsey and looked like he may have been reaching for a gun." *Id.* at 8. He points out that his "defenses at trial were that he acted in self-defense, committed at most voluntary manslaughter, and did not act with the *mens rea*[] necessary for attempted murder, murder, or aggravated assault." *Id.* at 26. Green argues that since the shooting was justified, and he did not act with the intent to kill or malice, the court should have allowed him to call character witnesses. *Id.*

Green further points out that the trial court "confused [his] self-defense, voluntary manslaughter, and lack of *mens rea* defenses for diminished capacity defenses[.]" *Id.* at 29. He agrees with the trial court that character evidence is not relevant to a diminished capacity defense. However, he asserts

that he did not argue a diminished capacity defense. *Id.* at 38. Green points out that he "did not argue that he had some sort of mental condition, cognitive limitation, or state of intoxication such that he could not form the specific intent to kill," as required for a diminished capacity defense. *Id.* at 40. Green maintains that the court "confused the nature of the defenses" and "a defendant's good character for non-violence is relevant in a self-defense homicide case." *Id.*

Green further emphasizes that he had character witnesses available and offered to put their names and dates of birth on the record. *Id.* at 6, 42. He argues that had he been permitted to call character witnesses, the Commonwealth would not have been permitted to use any alleged prior bad acts evidence to impeach because he had no prior convictions for violent crimes. *Id.* at 42-43. He notes that under Pa.R.E. 405(a)(2), "[i]n a criminal case, on cross-examination of a character witness, inquiry into allegations of other criminal conduct by the defendant, not resulting in conviction, is not permissible." Green points out that any proposed evidence of prior criminal acts "would have simply amounted to a backdoor method of smearing [his] character with unreliable hearsay evidence that would have been otherwise irrelevant and inadmissible." *Id.* at 47.

Regarding prejudice, Green cites **Commonwealth v. Weiss**, 606 A.2d 439 (Pa. 1992), to emphasize that the credibility of the witnesses was of utmost importance in this case where he testified that he acted in self-defense while Joseph testified that he overreacted and shot Eutsey over a phone. *Id.*

at 34-35. Green posits that "[h]ad the jury heard that Green had a reputation in the community for being a peaceful person, the jury may well have acquitted." *Id.* at 42. He thus maintains that the court's error in prohibiting him from calling character witnesses was not harmless. *Id.* at 31.

Character evidence is generally inadmissible in criminal cases to prove that on a particular occasion the person acted in accordance with the character or trait, but "a defendant may offer evidence of the defendant's pertinent trait[.]" Pa.R.E. 404(a)(1), (a)(2)(A). "[T]he courts of this Commonwealth have long recognized the importance of character evidence." *In re R.D.*, 44 A.3d 657, 668 (Pa.Super. 2012). As this Court has stated:

> It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has proper relation to the subject matter of the charge at issue. Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.
>
> It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence.

*Commonwealth v. Goodmond*, 190 A.3d 1197, 1201 (Pa.Super. 2018) (citation and internal quotation marks omitted). Thus, "[e]vidence of good

character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty." *Commonwealth v. Alceus*, 315 A.3d 853, 860 (Pa.Super. 2024) (citation omitted). "When character evidence is offered, the jury must be instructed that evidence of the defendant's good character alone may create a reasonable doubt as to his or her guilt, resulting in acquittal." *Id.; see also Commonwealth v. Scott*, 436 A.2d 607, 611 n.1 (Pa. 1981).

Further, "character evidence is vital to the jury's determination of credibility, and that by creating a reasonable doubt, that evidence may produce acquittal." *Commonwealth v. Harris*, 785 A.2d 998, 1002 (Pa.Super. 2001). Indeed, "where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance[.]" *Weiss*, 606 A.2d at 442; *see also Commonwealth v. Morgan*, 739 A.2d 1033, 1038 (Pa. 1999) (finding that trial court's ruling, which resulted in appellant's decision not to call character witnesses, was reversible error where there was no medical evidence presented nor any eyewitnesses to the offenses, and the prosecution of appellant was based upon the credibility of witnesses).

Here, Green was charged with violent crimes. Thus, evidence of his reputation for non-violent behavior was relevant and admissible. Since Green testified that he acted in self-defense, his credibility was "of paramount importance." *Weiss*, 606 A.2d at 442. As such, evidence of Green's non-violent character would have bolstered his credibility and would have been helpful to his defense. Accordingly, Green should have been permitted to

introduce evidence of his good character, and the trial court erred in prohibiting such evidence.

The trial court relied on **Kim** and found that character evidence was not relevant or admissible because Green conceded he committed the shooting. **See** Trial Ct. Op. at 13-14. However, the court's reliance on **Kim** is misplaced. In **Kim**, the appellant conceded that he shot and killed the victim but claimed diminished capacity, *i.e.*, he admitted criminal liability for the murder, but argued that he lacked the capacity to form the specific intent to kill. 888 A.2d at 853. The jury found the appellant guilty but mentally ill of first-degree murder. **Id.** at 850. On appeal, the appellant asserted that the trial court erred in failing to instruct the jury as to his reputation for peacefulness. **Id.** at 853. The appellant argued that "evidence of [his] general peaceful character could have rebutted the Commonwealth's evidence with regard to appellant's specific intent to kill" and that if presented with appellant's character evidence, the jury "could have rendered a verdict of not guilty, or a verdict of a lesser degree of murder." **Id.** In rejecting this claim, this Court explained:

> . . . Pennsylvania law is clear that while character evidence is admissible to prove that a defendant did not commit the charged crime, it is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity. In this regard, the diminished capacity defense concedes criminal liability for murder but asserts that appellant lacked the capacity to form the specific intent to kill. Therefore, good character evidence [is] not admissible to support a diminished capacity defense.

**Id.** (cleaned up).

Here, Green did not argue a diminished capacity defense. Rather, he argued that he acted in self-defense, committed at most voluntary manslaughter, and did not act with the *mens rea* necessary for attempted murder, murder, or aggravated assault. Therefore, **Kim** is inapplicable to the present case.

Since we have concluded that the court erred in precluding character evidence, we must now determine if that error was harmless. "An error is harmless where the uncontradicted evidence of guilt is so overwhelming that, by comparison, the error is insignificant." **Commonwealth v. Hoover**, 16 A.3d 1148, 1150 (Pa.Super. 2011). It is the Commonwealth's burden to establish harmlessness beyond a reasonable doubt. **Commonwealth v. Yocolano**, 169 A.3d 47, 53 (Pa.Super. 2017). Further,

> [t]he Commonwealth can meet its burden of showing harmlessness by persuading us the error did not prejudice the appellant or did so to a *de minimis* extent, and/or by persuading us the properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Hoover**, 16 A.3d at 1150.

Given the importance of credibility in the instant case, we cannot find the error to be harmless beyond a reasonable doubt. The character witnesses would have strengthened Green's credibility, and the jury may have been more likely to credit his theory that he acted in self-defense. **See Commonwealth v. Farrior**, 458 A.2d 1356, 1364 (Pa.Super. 1983) (remanding for new trial because trial court's ruling that resulted in

defendant's decision not to call character witnesses was not harmless; the proposed character witnesses would have presented evidence concerning defendant's law-abiding reputation, which, if believed by the jury, may have created a reasonable doubt as to his guilt and resulted in acquittal).[2] Based on the foregoing, and after our review of the record, we conclude that it is necessary to remand for a new trial. In view of our disposition of this issue, we need not address Green's remaining issue.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2025

---

[2] The Commonwealth argues in a brief footnote that the lack of character witnesses did not prejudice Green because the evidence against him was overwhelming. Commonwealth's Br. at 12 n.1. However, the Commonwealth fails to offer any support for this claim or further develop it. As previously set forth, the Commonwealth had the burden to establish harmlessness beyond a reasonable doubt. Thus, the Commonwealth failed to meet its burden.

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VYANTE ANTON GREEN | : | |
| | : | |
| Appellant | : | No. 920 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0005511-2018

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 16, 2025**

Vyante Anton Green appeals from the judgment of sentence following his convictions for third-degree murder and aggravated assault after a retrial.[1] Because we conclude that the trial court erred in prohibiting Green from calling character witnesses, we vacate Green's judgment of sentence and remand for a new trial.

In February 2020, Green was found guilty of first-degree murder, attempted criminal homicide, aggravated assault, and firearms not to be carried without a license. Green filed a direct appeal to this Court. We found no error or abuse of discretion in the trial court's refusal to deliver a self-defense instruction. *See Commonwealth v. Green*, 273 A.3d 1080, 1087 (Pa.Super. 2022). However, we vacated Green's judgment of sentence

---

[1] 18 Pa.C.S.A. §§ 2502(c) and 2702(a)(1), respectively.

because we found the trial court erred when it refused to give the jury an instruction on voluntary manslaughter or "imperfect self-defense." *Id.* at 1089. We remanded the case for a new trial. *Id.*

A second trial was held in October 2023. The trial court summarized the facts at the second trial as follows:

> [On] December 31, 2017, a New Year's Eve party was held at 1131 Turner Street in the City of Allentown. Both Kenyatta Eutsey and Dimitri Joseph were invited guests to this celebration. [Green], who learned about the party through social media, arrived separately, but was also invited to attend the party . . .
>
> Shortly after midnight, shots were fired by a shooter who was later identified to be [Green]. Various witnesses who attended the party, and were in close proximity to the shooting, heard gunshots . . .
>
> [Mr. Joseph] was enjoying himself without incident, and after the "ball dropped," he looked for Mr. Eutsey. He found him chatting with other people, and with others they took "group photos." Mr. Eutsey, who was intoxicated, told Mr. Joseph that "he felt like taking someone's phone." Mr. Joseph, who thought Mr. Eutsey was joking, did not take him seriously. However, Mr. Eutsey got up from his seat, and Mr. Joseph saw him "snatch" a phone. It was the phone of [Green's]. He then saw "the person" ([Green]) pull out a firearm and point it at Mr. Eutsey. He then shot Mr. Eutsey twice. Mr. Eutsey went down, and [Green] scanned the room until he fixed his eyes on Mr. Joseph. The two were approximately 20-25 feet apart when [Green] shot Mr. Joseph.
>
> Mr. Joseph was struck three times and [sustained life-threatening] injuries . . .
>
> [Green] testified at his earlier trial, and his testimony, both direct and cross-examination, was introduced into evidence at the retrial through the testimony of Detective Kevin Mriss. [Green], who testified that he always carried a gun, admitted to shooting both Mr. Eutsey and Mr. Joseph.

- 2 -

He did so over his "snatched" cell phone. He did so even though he never saw Mr. Eutsey or Mr. Joseph with a weapon. He pulled his .32 caliber revolver from his right pocket and shot Mr. Eutsey when Mr. Eutsey refused to return his cell phone. He also alleged that Mr. Eutsey either tried to "fake swing or try to swing," [Green] "weaved," and fired the first shot. No other witnesses saw Mr. Eutsey do anything like that.

The testimony is extensive, but a short excerpt of how [Green] shot Mr. Eutsey is found in the following testimony:

[DEFENSE COUNSEL]: Explain what you did in response to that swing.

[MR. GREEN]: So when the swing came, I just leaned back. The firearm was still pointed at the individual [Eutsey]. It was just a quick reaction and it just discharged.

Q: And you fired?

A: Correct.

Q: And you pulled the trigger?

A: Yes, I did.

Q: And what happened after you pulled the trigger that first shot?

A: I believe I shot again, too.

Q: What happened to the person, if anything, that you shot between the first shot and the second shot?

A: He fell down.

Q: Did he fall down between the first shot and the second shot or after you fired you said two shots at him?

A: By the time the second shot hit him, he was dropping.

Q: And then what did you do?

A: After that is when I seen the second individual start coming towards the direction I was heading in. But, like I said, his hand was covered up. I didn't know if he was trying to pull a firearm out or not. At that time I – wasn't trying to

wait to get shot. I turned around and started firing at the second individual [Mr. Joseph].

[Green] then fled the scene, eventually making his way to a club, Catch 22. [Green], who had been drinking Hennessey at the party, claimed he was intoxicated by the time he reached Catch 22. He learned the next day that one person [Mr. Eutsey] was dead, and one person was "seriously injured or clinging to life." He changed his clothes and got rid of the gun, and made plans to travel to New York.

Trial Court Opinion, filed 6/6/24, at 4-9 (footnotes omitted).

Prior to his second trial, Green indicated that he sought to call character witnesses to testify about his reputation in the community as a peaceful, non-violent person. The Commonwealth asserted that it would impeach Green's character witnesses with evidence of Green's prior bad acts that did not result in convictions. Green filed a motion *in limine* to preclude this impeachment. The trial court held a hearing on the motion on September 27, 2023, at which potential character witnesses appeared. *See* N.T., 9/27/23, at 3, 11. The following exchange occurred between the trial court and defense counsel at the hearing:

THE COURT: . . . So this is the problem that you have. Your client – there's a question whether character evidence is even relevant in this case. Your client took the stand in this courtroom and admitted to shooting Kenyatta Eutsey two times and admitted to shooting Mr. Joseph and severely injuring Mr. Joseph. So why is character evidence relevant?

Now I'm going to read you the cases, which basically say that in this type of a case character evidence isn't even relevant. Maybe I'll start with that, and then you can respond to it.

[DEFENSE COUNSEL]: Okay.

- 4 -

THE COURT: I know you're very familiar with case law, and I'm assuming you've read ***Commonwealth v. Kim***, [888 A.2d 847 (Pa.Super. 2005)], which has been examined subsequently in ***Commonwealth v. Saylor*** and approved, and that is identified as 2021 WL 797187 (Pa.Super. 2021.)

And it says the following: Pennsylvania law is clear that while character evidence is admissible to prove that a defendant did not commit the charged crime, it is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity. In this regard, the diminished capacity defense concedes criminal liability for murder but asserts that appellant lacked the capacity to form the specific intent to kill. Therefore, good character evidence is not admissible to support a diminished capacity defense.

So why is character evidence even relevant in this case?

[DEFENSE COUNSEL]: I mean, we're not – so diminished capacity --

THE COURT: Well, first to third or voluntary manslaughter, as the case may be.

[DEFENSE COUNSEL]: But I don't – we're not really arguing diminished capacity. I mean, we're potentially arguing voluntary manslaughter. Depending on how the testimony comes out, the Court will have to make rulings again on self-defense . . .

I mean, [it's] -- an assertion of imperfect self-defense or self-defense, I think it is certainly relevant whether or not he is a peaceful, nonviolent person. If he has a reputation for being a peaceful, nonviolent person, I think that is relevant on whether or not he acted with respect to self-defense . . .

[THE COURT]: So we're sort of parsing over what diminished capacity means, but clearly ***Kim*** and ***Saylor*** say that if he is conceding he did the shooting, I'm not going to permit you to present character witnesses.

So what that means for your motion is that at this point it's going to be denied without prejudice in case the defense is

- 5 -

> something other than what your client said on the stand at the first trial.
>
> [DEFENSE COUNSEL]: I respect the Court's ruling. You know, I do not think that we are arguing a diminished capacity defense.

*Id.* at 5-10.

At trial, defense counsel renewed his request to call character witnesses. *See* N.T., 10/3/23, at 301-02; N.T., 10/4/23, at 169-70. Defense counsel argued that "this is a self-defense or manslaughter case and the character for nonviolence is relevant." N.T., 10/4/23, at 170. The trial court, citing *Kim*, reiterated its decision to exclude character witnesses because counsel "conceded that [his] client shot Mr. Eutsey and Mr. Joseph." *Id.* at 169.

The jury found Green guilty of third-degree murder and aggravated assault. He was sentenced to an aggregate term of 30 to 60 years' imprisonment. Green filed a post-sentence motion, which was denied. This appeal followed.

Green raises the following issues:

> 1. Whether the trial court erred in prohibiting Green, who had no criminal convictions for any crimes of violence, from calling character witnesses who would have testified to his excellent reputation in the community for being a peaceful, non-violent person in a homicide and assault case in which Green's defenses were that he acted in self-defense, he at most committed voluntary manslaughter rather than murder, and he did not act with the malice or the specific intent to kill required to prove the crimes with which he was charged.
>
> 2. Whether the trial court erred in making its own credibility determinations and denying Green's request for a self-defense jury instruction where the Commonwealth introduced Green's prior testimony that he acted to

> defend himself from two much bigger men who robbed
> him of his phone, threatened him, tried to punch him,
> and appeared to be armed.

Green's Br. at 4.

Green first argues that the trial court erred in prohibiting him from calling character witnesses at trial who would have testified that he had a reputation in the community for being peaceful and non-violent. *Id.* at 29. He maintains that such testimony would have been relevant because he was charged with violent crimes and "someone with a reputation for peacefulness is less likely to commit a murder and aggravated assault for no real reason." *Id.* Green conceded that he shot Eutsey and Joseph, "[b]ut [he] testified at the prior trial that he acted in self-defense after Eutsey, who was drunk and twice his size, robbed him, threatened him, and tried to assault him further while Joseph rushed over to assist Eutsey and looked like he may have been reaching for a gun." *Id.* at 8. He points out that his "defenses at trial were that he acted in self-defense, committed at most voluntary manslaughter, and did not act with the *mens rea*[] necessary for attempted murder, murder, or aggravated assault." *Id.* at 26. Green argues that since the shooting was justified, and he did not act with the intent to kill or malice, the court should have allowed him to call character witnesses. *Id.*

Green further points out that the trial court "confused [his] self-defense, voluntary manslaughter, and lack of *mens rea* defenses for diminished capacity defenses[.]" *Id.* at 29. He agrees with the trial court that character evidence is not relevant to a diminished capacity defense. However, he asserts

that he did not argue a diminished capacity defense. *Id.* at 38. Green points out that he "did not argue that he had some sort of mental condition, cognitive limitation, or state of intoxication such that he could not form the specific intent to kill," as required for a diminished capacity defense. *Id.* at 40. Green maintains that the court "confused the nature of the defenses" and "a defendant's good character for non-violence is relevant in a self-defense homicide case." *Id.*

Green further emphasizes that he had character witnesses available and offered to put their names and dates of birth on the record. *Id.* at 6, 42. He argues that had he been permitted to call character witnesses, the Commonwealth would not have been permitted to use any alleged prior bad acts evidence to impeach because he had no prior convictions for violent crimes. *Id.* at 42-43. He notes that under Pa.R.E. 405(a)(2), "[i]n a criminal case, on cross-examination of a character witness, inquiry into allegations of other criminal conduct by the defendant, not resulting in conviction, is not permissible." Green points out that any proposed evidence of prior criminal acts "would have simply amounted to a backdoor method of smearing [his] character with unreliable hearsay evidence that would have been otherwise irrelevant and inadmissible." *Id.* at 47.

Regarding prejudice, Green cites **Commonwealth v. Weiss**, 606 A.2d 439 (Pa. 1992), to emphasize that the credibility of the witnesses was of utmost importance in this case where he testified that he acted in self-defense while Joseph testified that he overreacted and shot Eutsey over a phone. *Id.*

- 8 -

at 34-35. Green posits that "[h]ad the jury heard that Green had a reputation in the community for being a peaceful person, the jury may well have acquitted." *Id.* at 42. He thus maintains that the court's error in prohibiting him from calling character witnesses was not harmless. *Id.* at 31.

Character evidence is generally inadmissible in criminal cases to prove that on a particular occasion the person acted in accordance with the character or trait, but "a defendant may offer evidence of the defendant's pertinent trait[.]" Pa.R.E. 404(a)(1), (a)(2)(A). "[T]he courts of this Commonwealth have long recognized the importance of character evidence." *In re R.D.*, 44 A.3d 657, 668 (Pa.Super. 2012). As this Court has stated:

> It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has proper relation to the subject matter of the charge at issue. Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.
>
> It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence.

*Commonwealth v. Goodmond*, 190 A.3d 1197, 1201 (Pa.Super. 2018) (citation and internal quotation marks omitted). Thus, "[e]vidence of good

character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty." ***Commonwealth v. Alceus***, 315 A.3d 853, 860 (Pa.Super. 2024) (citation omitted). "When character evidence is offered, the jury must be instructed that evidence of the defendant's good character alone may create a reasonable doubt as to his or her guilt, resulting in acquittal." ***Id.; see also Commonwealth v. Scott***, 436 A.2d 607, 611 n.1 (Pa. 1981).

Further, "character evidence is vital to the jury's determination of credibility, and that by creating a reasonable doubt, that evidence may produce acquittal." ***Commonwealth v. Harris***, 785 A.2d 998, 1002 (Pa.Super. 2001). Indeed, "where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance[.]" ***Weiss***, 606 A.2d at 442; ***see also Commonwealth v. Morgan***, 739 A.2d 1033, 1038 (Pa. 1999) (finding that trial court's ruling, which resulted in appellant's decision not to call character witnesses, was reversible error where there was no medical evidence presented nor any eyewitnesses to the offenses, and the prosecution of appellant was based upon the credibility of witnesses).

Here, Green was charged with violent crimes. Thus, evidence of his reputation for non-violent behavior was relevant and admissible. Since Green testified that he acted in self-defense, his credibility was "of paramount importance." ***Weiss***, 606 A.2d at 442. As such, evidence of Green's non-violent character would have bolstered his credibility and would have been helpful to his defense. Accordingly, Green should have been permitted to

introduce evidence of his good character, and the trial court erred in prohibiting such evidence.

The trial court relied on **Kim** and found that character evidence was not relevant or admissible because Green conceded he committed the shooting. **See** Trial Ct. Op. at 13-14. However, the court's reliance on **Kim** is misplaced. In **Kim**, the appellant conceded that he shot and killed the victim but claimed diminished capacity, *i.e.*, he admitted criminal liability for the murder, but argued that he lacked the capacity to form the specific intent to kill. 888 A.2d at 853. The jury found the appellant guilty but mentally ill of first-degree murder. **Id.** at 850. On appeal, the appellant asserted that the trial court erred in failing to instruct the jury as to his reputation for peacefulness. **Id.** at 853. The appellant argued that "evidence of [his] general peaceful character could have rebutted the Commonwealth's evidence with regard to appellant's specific intent to kill" and that if presented with appellant's character evidence, the jury "could have rendered a verdict of not guilty, or a verdict of a lesser degree of murder." **Id.** In rejecting this claim, this Court explained:

> . . . Pennsylvania law is clear that while character evidence is admissible to prove that a defendant did not commit the charged crime, it is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity. In this regard, the diminished capacity defense concedes criminal liability for murder but asserts that appellant lacked the capacity to form the specific intent to kill. Therefore, good character evidence [is] not admissible to support a diminished capacity defense.

**Id.** (cleaned up).

- 11 -

Here, Green did not argue a diminished capacity defense. Rather, he argued that he acted in self-defense, committed at most voluntary manslaughter, and did not act with the *mens rea* necessary for attempted murder, murder, or aggravated assault. Therefore, **Kim** is inapplicable to the present case.

Since we have concluded that the court erred in precluding character evidence, we must now determine if that error was harmless. "An error is harmless where the uncontradicted evidence of guilt is so overwhelming that, by comparison, the error is insignificant." **Commonwealth v. Hoover**, 16 A.3d 1148, 1150 (Pa.Super. 2011). It is the Commonwealth's burden to establish harmlessness beyond a reasonable doubt. **Commonwealth v. Yocolano**, 169 A.3d 47, 53 (Pa.Super. 2017). Further,

> [t]he Commonwealth can meet its burden of showing harmlessness by persuading us the error did not prejudice the appellant or did so to a *de minimis* extent, and/or by persuading us the properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Hoover**, 16 A.3d at 1150.

Given the importance of credibility in the instant case, we cannot find the error to be harmless beyond a reasonable doubt. The character witnesses would have strengthened Green's credibility, and the jury may have been more likely to credit his theory that he acted in self-defense. **See Commonwealth v. Farrior**, 458 A.2d 1356, 1364 (Pa.Super. 1983) (remanding for new trial because trial court's ruling that resulted in

- 12 -

defendant's decision not to call character witnesses was not harmless; the proposed character witnesses would have presented evidence concerning defendant's law-abiding reputation, which, if believed by the jury, may have created a reasonable doubt as to his guilt and resulted in acquittal).[2] Based on the foregoing, and after our review of the record, we conclude that it is necessary to remand for a new trial. In view of our disposition of this issue, we need not address Green's remaining issue.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2025

_____

[2] The Commonwealth argues in a brief footnote that the lack of character witnesses did not prejudice Green because the evidence against him was overwhelming. Commonwealth's Br. at 12 n.1. However, the Commonwealth fails to offer any support for this claim or further develop it. As previously set forth, the Commonwealth had the burden to establish harmlessness beyond a reasonable doubt. Thus, the Commonwealth failed to meet its burden.